UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>REFCO, INC. et al.<br><br>                    Debtors. | Chapter 11<br>Case No. 05-60006 (RDD)<br>(Jointly Administered) |
| JOSEPH MURPHY, WILLIAM M. SEXTON, DENNIS A. KLEJNA, GERALD SHERER, PHILIP SILVERMAN, RICHARD N. OUTRIDGE, TONE GRANT, LEO R. BREITMAN, NATHAN GANTCHER, DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS H. LEE, RONALD O'KELLEY, and SCOTT A. SCHOEN,<br><br>                    Plaintiffs,<br>          v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. and ARCH INSURANCE COMPANY,<br><br>                    Defendants.<br><br>JOHN D. AGOGLIA, EDWIN L. COX, SUKHMEET DHILLON, THOMAS H. DITTMER, STEPHEN GRADY,THOMAS HACKL, ERIC G. LIPOFF, PETER MCCARTHY and FRANK MUTTERER,<br><br>                    Nominal Defendants. | Adv. Proc. No. 08-01133 (RDD) |

**MEMORANDUM IN SUPPORT OF
ARCH INSURANCE COMPANY'S MOTION TO WITHDRAW
THE REFERENCE TO THE BANKRUPTCY COURT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT .................................................................................................................................... 7

    I      THE REFERENCE OF THIS NON-CORE INSURANCE COVERAGE DISPUTE SHOULD BE WITHDRAWN ................................... 7

          A.    The Applicable Standard ............................................................................. 7

          B.    The Adversary Proceeding Is Non-Core ..................................................... 8

          C.    Other Factors Weigh in Favor of Withdrawing the Reference ................ 10

CONCLUSION .............................................................................................................................. 12

Arch Insurance Company ("Arch") submits this memorandum in support of its motion for an Order, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a) and Local Bankruptcy Rule 5011-01, for cause shown, withdrawing the reference to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of the causes of action asserted against Arch (the "Arch Coverage Claims") in the captioned Adversary Proceeding (the "Adversary Proceeding") filed by certain former directors and officers (the "D&Os") of Refco, Inc. and/or its subsidiaries (collectively, "Refco").

## PRELIMINARY STATEMENT

Arch issued an excess directors and officers liability policy to Refco (the "Arch Policy"). The D&Os have brought this action against Arch seeking payment under the Arch Policy of defense costs incurred by them in connection with certain ongoing lawsuits and proceedings arising out of the massive financial fraud revealed by Refco in October 2005 (the "Underlying Matters"). They have brought their claims for coverage in the Bankruptcy Court despite the fact that a nearly identical action brought by Arch currently is pending in the Supreme Court of the State of New York (the "State Court Action"). In June 2006, Judge Drain granted Arch's motion for relief from the automatic stay (to the extent applicable) to pursue the State Court Action. And, as recently as eight months ago, at the request of certain directors and officers who are parties to this action, Judge Drain declined to entertain claims raising issues of coverage under the Arch Policy and reiterated that those issues should be decided by the New York state court.

Despite their recent arguments to Judge Drain that issues of coverage under the Arch Policy were not properly before the Bankruptcy Court and should be litigated in New York state court, the D&Os have now reversed course, insisting that their newly filed, duplicative action against Arch must be adjudicated in the Bankruptcy Court. Their efforts in this regard smack of

forum shopping and undermine the interests of judicial efficiency and economy. This is especially so given that the coverage dispute is a non-core matter with respect to which the Bankruptcy Court does not have the authority to issue a final order.

In these circumstances, and as demonstrated below, cause exists to withdraw the reference of the Arch Coverage Claims to the Bankruptcy Court. Withdrawing the reference will promote judicial economy and discourage forum shopping. Moreover, because the availability of coverage under the Arch Policy turns on questions of state contract law, and not any bankruptcy-related issue, the uniform administration of federal bankruptcy law is not affected. This insurance coverage dispute simply does not belong in the Bankruptcy Court.

## BACKGROUND

*The Arch Policy*. Arch issued the Arch Policy to Refco for the period from August 11, 2005 to August 11, 2006. *See* Ex. B to First Am. Compl. The Policy has a limit of liability of $10 million excess of $40 million in underlying insurance. Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company issued a primary policy with limits of $10 million excess of applicable retentions (the "Primary Policy"). *See* Ex. C to First Am. Compl. Lexington Insurance Company issued a first excess policy with limits of $7.5 million excess of $10 million (the "Lexington Policy"). Axis Reinsurance Company issued a second excess policy with limits of $10 million excess of $17.5 million (the "Axis Policy"). Allied World Assurance Company issued a third excess policy with limits of $12.5 million excess of $27.5 million (the "AWAC Policy").

In general, the Arch Policy applies in conformance with the terms and conditions of the Primary Policy and in conformance with the terms and conditions of the Arch Policy or any other underlying insurance "further limiting or restricting coverage." Arch Policy, Section I.C. The

2

Arch Policy provides that "[i]n no event shall this Policy grant broader coverage than that provided by the most restrictive policy included in the Underlying Insurance." *Id.*

Particularly relevant to the dispute between the D&Os and Arch is the following provision in the Arch Policy:

> If any Insured as of August 11, 2005 has any knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to a Claim under this Policy, [Arch] shall not be liable to make any payment under this Policy as a result of a Claim arising out of, based upon or attributable to any such act, error, omission, fact, matter or circumstance.

*Id.*, Endorsement No. 4 (the "Arch Prior Knowledge or Information Exclusion").

***The Initial State Court Action***. In October 2005, two months after its initial public offering, Refco announced that its financial statements failed to disclose the existence of a $430 million receivable from an entity controlled by Phillip R. Bennett and, therefore, could not be relied upon. Numerous lawsuits were filed against Refco's directors and officers (the "Underlying Matters"). Certain directors and officers, including the D&Os that have brought this Adversary Proceeding, sought coverage for these Underlying Matters under the Refco directors and officers insurance policies.

Arch denied coverage for the Underlying Matters citing, among other grounds, the Arch Prior Knowledge or Information Exclusion. On March 9, 2006, Arch filed a declaratory judgment action in the New York Supreme Court of New York County seeking a declaration that the Arch Policy did not afford coverage for the Underlying Matters – *Arch Ins. Co. v. Bennett, et al.*, Index No. 06/600805 (N.Y. Sup. Ct.) (the "Initial State Court Action"). Specifically, Arch sought a declaration that the Arch Prior Knowledge or Information Exclusion barred coverage for the Underlying Matters.

3

On June 8, 2006, the Bankruptcy Court granted Arch's motion for relief from the automatic stay (to the extent applicable) to pursue its coverage litigation in State Court. *See* June 8, 2006 Hr'g Tr., Ex. A to Declaration of John H. Eickemeyer ("Eickemeyer Decl."). In September 2006, certain defendants in the Initial State Court Action (including the D&Os) filed motions to dismiss and/or stay the case, arguing that: (a) the action was not ripe, because the Arch Policy would not attach until $40 million in underlying insurance had been exhausted – and the possibility of such exhaustion was remote – and (b) adjudication of Arch's coverage defenses would directly overlap with facts disputed in the Underlying Matters.

On February 20, 2007, the State Court dismissed Arch's Initial State Court Action without prejudice. *See* Feb. 20, 2007 Order, Ex. B to Eickemeyer Decl. Justice Freedman concluded that Arch's action was not ripe because the possibility that the Underlying Matters would ever generate losses that would implicate the Arch Policy was speculative. Justice Freedman also held that Arch could not proceed with its action at the time because the question of whether any insured had knowledge of facts or circumstances that might give rise to a claim as of the Arch Policy inception date – a key issue for purposes of determining the applicability of the Arch Prior Knowledge or Information Exclusion – would overlap with issues that were not yet adjudicated in the Underlying Matters.

***Arch's Motion to Intervene as a Defendant.*** Six months later, the D&Os asserted claims against Axis for coverage under the Axis Policy (the second excess policy) in the Bankruptcy Court. Arch sought to intervene as a defendant in that action to litigate the question whether the insurers who had denied coverage for the Underlying Matters nevertheless had a duty to advance defense costs to the D&Os before the coverage issues were judicially determined. The D&Os opposed Arch's effort, again arguing that issues of coverage under the Arch Policy were not ripe

4

for adjudication and that such issues should be litigated in another forum. *See* Opp'n to Mot. to Intervene, Ex. C to Eickemeyer Decl., at 10-11. The Bankruptcy Court agreed. In denying Arch's motion to intervene on August 30, 2007, Judge Drain also noted that he had concerns about his jurisdiction to hear issues of coverage that did not involve Refco and explicitly held that if those issues of coverage pertaining to Arch are "to be brought at all, [they] should be brought in another court when they become ripe." *See* Aug. 30, 2007 Hr'g Tr. 18, Ex. D to Eickemeyer Decl.

***The Pending State Court Action***. On January 4, 2008, after former Refco Executive Vice President Santo C. Maggio pleaded guilty to conspiracy and securities fraud, among other crimes, in connection with the massive fraud at Refco that gave rise to the Underlying Matters, and after nearly $27 million in defense costs had been paid by the underlying insurers, Arch again sought declaratory relief in the State Court, filing the action *Arch Insurance Company v. Agoglia, et al.*, Index No. 08/600029 (Sup. Ct., N.Y. Cty., N.Y.). Six weeks later, and after Bennett (Refco's former Chairman, President and Chief Executive Officer) and Robert Trosten (Refco's former Chief Financial Officer) similarly acknowledged their involvement in the fraud and pleaded guilty to a number of federal crimes, including conspiracy, securities fraud, wire fraud, bank fraud and money laundering, Arch filed a first amended complaint (the "Amended Complaint"), which names as defendants twenty-six individuals, including the fourteen individuals who have brought the Arch Coverage Claims in the Bankruptcy Court. *See* Arch Am. Compl., Ex. E to Eickemeyer Decl.

Counts I and II of the Amended Complaint seek judicial declarations that, based on certain exclusions, the Arch Policy does not provide coverage for any loss arising out of the

5

Underlying Matters. Count II specifically references the Arch Prior Knowledge or Information Exclusion as a complete bar to coverage for the Underlying Matters.

On April 17, 2008, Bennett stipulated in the State Court Action "that the Arch Policy does not afford him any coverage whatsoever for any of the Underlying Matters." Bennett also "agree[d] to the entry of judgment against him on Counts I and II of the [Amended Complaint]." *See* Stipulation of Judgment against Defendant Phillip R. Bennett, Ex. F to Eickemeyer Decl. Arch is informed that the stipulation has been signed by Justice Freedman, and entry of judgment is anticipated to occur shortly.

On April 21, 2008, Maggio and Arch filed a stipulation with the State Court pursuant to which Maggio agreed that he was not entitled to any coverage under the Arch Policy. Arch agreed to a voluntary discontinuance of its action against him. *See* Stipulation of Partial Discontinuance, Ex. G to Eickemeyer Decl. Arch is informed that this stipulation also has been signed by Justice Freedman.

***The Adversary Proceeding***. Meanwhile, on March 12, 2008, the D&Os initiated this action in the Bankruptcy Court. Their original complaint named as a defendant only AWAC and asserted claims for coverage under only the AWAC Policy. Six weeks later, and four months after Arch initiated the pending State Court Action, the D&Os filed a "First Amended Complaint" in the Adversary Proceeding, which names Arch as an additional defendant.

In their First Amended Complaint, the D&Os note that Arch denied coverage under the Arch Policy by letter dated March 6, 2006, as well as in subsequent correspondence, based upon the Arch Prior Knowledge or Information Exclusion, among other grounds. *See* First Am. Compl. ¶ 83. The D&Os seek a judicial declaration that they are entitled to coverage under the Arch Policy for loss incurred in the Underlying Matters, including defense costs, and seek

6

permanent injunctive relief requiring Arch to make payments for such loss under the Arch Policy. The D&Os also assert a cause of action against Arch for breach of contract.

## ARGUMENT

I. **THE REFERENCE OF THIS NON-CORE INSURANCE COVERAGE DISPUTE SHOULD BE WITHDRAWN**

   A. **The Applicable Standard**

The Adversary Proceeding automatically was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges, Southern District of New York, dated July 10, 1984. This Court, however, "'may withdraw, in whole or in part, any case or proceeding [so] referred . . . on its own motion or on timely motion of any party, for cause shown.'" *See In re Enron Corp.*, No. 07-CIV-10612, 2008 WL 718284, at *4 (S.D.N.Y. Mar. 17, 2008) (quoting 28 U.S.C. § 157(d)).

In determining whether "cause" exists to withdraw the reference, the district court considers several factors, including the "core" status of the matter and whether withdrawing the reference will promote judicial efficiency, prevent forum shopping and support uniformity in the administration of bankruptcy law. *See S. St. Seaport Ltd. P'ship v. Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Enron Corp.*, 2008 WL 718284, at *4; *NW. Airlines Inc. v. City of Los Angeles* (*In re Northwest Airlines Corp.*), Nos. 0517930, 07civ2677, 2008 WL 515667, at *3 (Bankr. S.D.N.Y. Feb. 27, 2008). Whether the matter is core or non-core is the "most important" among these factors. *See Enron Corp.*, 2008 WL 718284, at *4. This is because, in cases of non-core matters, bankruptcy courts are not authorized to enter final orders. Rather, they can only recommend findings of fact and conclusions of law to the district court, which are then subject to *de novo* review. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982); *In re Orion*, 4 F.3d at

7

1101; *In re Northwest Airlines*, 2008 WL 515667, at *4. When a proceeding involves a non-core matter, therefore, it is a more efficient use of judicial resources for it to be heard in the district court in the first instance. For this reason, that a matter is non-core strongly weighs in favor of withdrawing the reference. *See Burger Boys*, 94 F.3d at 762; *In re Orion Pictures*, 4 F.3d at 1101; *see also Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 110, 113 (Bankr. E.D.N.Y. 2002); *Durso Supermarkets, Inc. v. Durso* (*In re Durso Supermarkets, Inc.*), 170 B.R. 211, 213 (Bankr. S.D.N.Y. 1994).

### B. The Adversary Proceeding Is Non-Core

Section 157(b) distinguishes between "core" and "non-core" bankruptcy proceedings. *See* 28 U.S.C. § 157(b). In general, core proceedings with respect to which the bankruptcy court has jurisdiction to hear and enter judgments are proceedings that either "arise under" Title 11 or "arise in" a bankruptcy case under Title 11. *See Norkin v. DLA Piper Rudnick Gray Cary, LLP*, Case No. 05-CIV-9137, 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006) (citing *Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 447-48 (2d Cir. 2005)); *JT Moran Fin. Corp. v. Am. Consol. Fin. Corp.* (*In re J.T. Moran Fin. Corp.*), 124 B.R. 931, 937 (Bankr. S.D.N.Y. 1991). Such proceedings "must invoke a substantive right provided by [T]itle 11." *See id.* In contrast, non-core proceedings "consist of those claims arising under traditional state law which must be determined by state law . . . . They are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court." *See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 201 B.R. 635, 639 (Bankr. S.D.N.Y. 1996) (citations and internal quotation marks omitted).

Here, the causes of action asserted against Arch in the Adversary Proceeding are not based on any provision in the bankruptcy code, but rather are grounded in principles of state contract law. Moreover, the contract at issue – that is, the Arch Policy – was entered into before

Refco's bankruptcy filing, and the D&Os' demands for payment under that contract would exist outside of the bankruptcy context. *See In re Petrie Retail, Inc.* 304 F.3d 223, 229 (2d Cir. 2002) ("The fact that the [contract] was executed pre-petition and that the dispute . . . could arise outside of bankruptcy proceedings weighs against its core status"); *Mt. McKinley*, 399 F.3d at 448-49 (action by non-debtors concerning coverage under insurance contracts issued to debtor before bankruptcy filing was non-core); *In re U.S. Lines, Inc.*, 197 F.3d 631, 636 (2d Cir. 1999); *In re Northwest Airlines*, 2008 WL 515667, at *5; *Lawrence Group, Inc. v. Hartford Cas. Ins. Co.* (*In re Lawrence Group, Inc.*), 285 B.R. 784, 788 (Bankr. N.D.N.Y. 2002) (proceeding to determine rights under insurance policy issued to debtor pre-petition was non-core); *see also Northern Pipeline*, 458 U.S. at 71 (the restructuring of debtor-creditor relationships is "at the core of the federal bankruptcy power, . . . [but] the adjudication of state-created private rights [is not]"). For these reasons, the Arch Coverage Claims are not core and the reference should be withdrawn. *See In re Durso Supermarkets*, 170 B.R. at 215 ("[t]his non-core Action presents no issue of bankruptcy; rather, it alleges only state law claims of fraud and breach of contract"); *In re J.T. Moran Fin. Corp.*, 124 B.R. at 941 (holding that "adversary proceeding for a breach of a pre-petition contract arising out of the defendants' pre-petition and post-petition alleged defaults in paying the amounts due under the surplus notes" was a non-core proceeding and that the reference should be withdrawn).

Indeed, Judge Koetl of this Court recently has held that the D&Os' claims for coverage under the Axis Policy issued to Refco constitute non-core proceedings. *See* Oct. 5, 2007 Hr'g Tr. 25, Ex. H to Eickemeyer Decl. Axis brought suit in the Bankruptcy Court against certain of the D&Os, seeking a declaration that its policy did not afford coverage for the Underlying Matters. After the Bankruptcy Court entered a preliminary injunction against Axis, Axis sought

9

to withdraw the reference. Judge Koetl ruled that the coverage proceedings were non-core matters but declined to withdraw the reference, holding that Axis's motion was untimely.

### C. Other Factors Weigh in Favor of Withdrawing the Reference

That the Arch Coverage Claims are non-core weighs strongly in favor of withdrawing the reference. *See Burger Boys*, 94 F.3d at 762; *In re Orion Pictures*, 4 F.3d at 1101. Other factors similarly support this conclusion, including the interests of judicial economy, timing and prevention of forum shopping. *See id.*

Consistent with Judge Drain's prior rulings that issues of coverage under the Arch Policy "should be brought in another court" and that relief from the automatic stay (to the extent applicable) was warranted for Arch to pursue a resolution of such issues in State Court, the pending State Court Action before Justice Freedman is the appropriate forum to address the Arch Coverage Claims. Indeed, this position is supported by the fact that there is no basis for federal court subject matter jurisdiction here, unless the claims asserted are deemed to be related to the bankruptcy, and that the questions presented turn on state contract law principles. *See* 28 U.S.C. § 1334(c)(2). In the event it is determined that the Arch Coverage Claims should proceed in a forum other than the State Court, however, they should proceed in this Court, and not the Bankruptcy Court.

Currently pending before this Court are actions involving issues of coverage for the Underlying Matters under a policy issued by Axis – which sits below the Arch Policy in the relevant insurance program – and a policy issued by XL Specialty Insurance Company ("XL Specialty") – which sits above the Arch Policy. *See Axis Reinsurance Company v. Bennett, et al.*, Case Nos. 07-CV-07924, 08-CV-03242 (GEL) (S.D.N.Y.) (the "Axis Action"), and *XL Specialty Insurance Company v. Agoglia, et al.*, Case No. 08-CV-3821 (GEL) (S.D.N.Y.) (the "XL Specialty Action"). Arch also understands that its co-defendant in the Adversary

10

Proceeding, AWAC, intends to seek withdrawal of the reference to the Bankruptcy Court and that the D&Os will not contest that motion.  Thus, it appears that there will be no other Refco D&O coverage issues before Judge Drain.

Moreover, it is appropriate to withdraw the reference at this early stage, before the Bankruptcy Court has invested any considerable resources into the issues raised by the Arch Coverage Claims.  Indeed, the amended pleading naming Arch as a defendant for the first time before the Bankruptcy Court was filed just days before this motion was filed and, thus, the Bankruptcy Court has spent virtually no time on this matter as it pertains to Arch.  *See Mishkin v. Angeloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (that proceeding was in its early stages favored the withdrawal of the reference); *see also In re NW. Corp.*, Nos. 03-CV-12872, 04-53324, 04-1494, 2005 WL 2320113, at *2 (D. Del. Sept. 22, 2005) (withdrawal of reference timely when made at "a relatively early stage in the proceedings and significant discovery has not yet occurred").

Finally, withdrawing the reference of the Arch Coverage Claims would not promote forum shopping, but rather would thwart what appears to be blatant forum shopping by the D&Os.  In this connection, the D&Os opposed Arch's efforts less than a year ago to bring coverage issues before Judge Drain.  Only now — after Judge Drain has twice granted the D&Os' motions for preliminary injunctions requiring the insurers whose policies sit below the Arch Policy to advance defense costs notwithstanding their coverage defenses — do the D&Os wish to have Arch before Judge Drain.  The D&Os' forum selection further is rendered suspect by (a) Judge Drain's prior determination that the issues of coverage under the Arch Policy should be brought in another court and (b) the existence of Arch's State Court Action.  In any event, to the extent that the Arch Coverage Claims are to be heard in a federal court, it makes more sense

11

for them to be heard in this Court, which will be responsible for reviewing the Bankruptcy Court's decisions and making final determinations as to these non-core matters.

## **CONCLUSION**

For the reasons set forth above, Arch respectfully requests that the Court grant this motion to withdraw the reference to the Bankruptcy Court of the Arch Coverage Claims asserted in the Adversary Proceeding and order that this matter be transferred to it for further proceedings.

Date:   April 29, 2008

Respectfully submitted,

By:   _/s/ John H. Eickemeyer_____
John H. Eickemeyer  (JE-8302)
Daniel C. Green  (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

OF COUNSEL:

*Counsel for Defendant*
*Arch Insurance Company*

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>REFCO, INC. et al.<br><br>            Debtors.<br><br>JOSEPH MURPHY, WILLIAM M. SEXTON, DENNIS A. KLEJNA, GERALD SHERER, PHILIP SILVERMAN, RICHARD N. OUTRIDGE, TONE GRANT, LEO R. BREITMAN, NATHAN GANTCHER, DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS H. LEE, RONALD O'KELLEY, and SCOTT A. SCHOEN,<br><br>            Plaintiffs,<br>    v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. and ARCH INSURANCE COMPANY,<br><br>            Defendants.<br><br>JOHN D. AGOGLIA, EDWIN L. COX, SUKHMEET DHILLON, THOMAS H. DITTMER, STEPHEN GRADY,THOMAS HACKL, ERIC G. LIPOFF, PETER MCCARTHY and FRANK MUTTERER,<br><br>            Nominal Defendants. | Chapter 11<br>Case No. 05-60006 (RDD)<br>(Jointly Administered)<br><br><br>Adv. Proc. No. 08-01133 (RDD)<br><br>**CERTIFICATE OF SERVICE** |

    1.    I, John H. Eickemeyer, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, as follows:

    2.    On April 29, 2008, I caused a copy of the **MEMORANDUM IN SUPPORT OF ARCH INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT** to be served upon all parties who have made appearances in the above-captioned action by electronically filing same, thereby ensuring that counsel to each such party, received same, as registered e-filers who are registered to receive e-notices in this case;

13

      3.      On April 29, 2008, I caused copies of the **MEMORANDUM IN SUPPORT OF ARCH INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT** to be served upon all parties who have not yet made appearances in the above-captioned case by dispatching true copies of same into the custody of a courier service for overnight delivery, prior to the latest time designated by that service for such delivery, addressed as follows:

    John D. Agoglia
    3 Sweet Hollow Ct.
    St. James, NY  11780

    Edwin L. Cox
    c/o Brian O'Connor, Esq.
    Willkie Farr & Gallagher LLP
    787 Seventh Avenue
    New York, NY  10019-6099

    Sukhmeet Dhillon
    2 Glastonbury Place
    Laguna Niguel, CA  92677-5310

    Thomas H. Dittmer
    3594 Rockerman Road
    Miami, FL  33133

    Stephen Grady
    c/o Lawrence J. Kotler, Esq.
    Duane, Morris & Heckscher LLP
    30 South 17th Street
    Philadelphia, PA  19103

    Thomas Hackl
    c/o Avraham C. Moskowitz, Esq.
    Moskowitz and Book, LLP
    1372 Broadway
    New York, NY  10018

    Eric G. Lipoff
    16 Clay
    Irvine, CA  92620-3322

    Peter McCarthy
    38 South Bridge Street
    Poughkeepsie, NY  12601

Frank Mutterer
2043 Bay Blvd.
Seaside Heights, NJ  08751-1001

DATED:  April 29, 2008


　　　　　　　　　　　　　　　　　　　　　　　　 /s/  John H. Eickemeyer
　　　　　　　　　　　　　　　　　　　　　　　John H. Eickemeyer

15